No. 2.—James P. Guerry and Wife and others, plaintiffs in error, *vs.* Hardy Durham and others, defendants in error.

[1.] Where a bill in Equity is not answered, the same may be taken *pro confesso* at the *second* term, and a decree had thereon.

[2.] Where a decree in Equity was obtained, and is sought to be impaired by the complainants, and the defendants file a bill to review and reverse the decree, upon the ground that it was never served, and that the entry and return of service by the Sheriff was fraudulently directed and procured to be made by the party or their attorney: *Held*, that Chancery will entertain such a bill, and grant relief thereon, provided it be brought within twenty years from the time of the first judgment.

[3.] The failure to give bond and security previous to the granting of an injunction, is no cause for dismissing a bill.

[4.] Under the amendatory Act of 1842, the Judges of the Superior Courts may grant an injunction upon such terms as in their discretion the case may require. They may dispense with security altogether, provided it be not needed for the protection of the party against whom the injunction is to operate.

In Equity, in Twiggs Superior Court. Decision by Judge Hansell, October Term, 1851.

James R. Lowery died, and Thomas J. Perryman became his administrator—Hardy Durham being the surety upon his bond.

Guerry and Wife *et al.* *vs.* Durham *et al.*

In 1841, James P. Guerry, in right of his wife, one of the children of Lowery, and as guardian for three of the minor children, and John Williams in right of his wife, and as guardian of another minor child, filed their bill, in Twiggs Superior Court, against Perryman, as administrator, for an account. At the trial term, there being no answer, the bill was taken, *pro confesso*, and a verdict was rendered by the Jury for $2048 54, for each complainant. On this verdict, a judgment or decree was entered, in favor of Guerry individually, and as guardian for the three minors, for four times the said sum.

Subsequently, a suit was commenced on the administrator's bond, against Durham the surety, and a judgment obtained for a sum smaller, by several thousand dollars, than the decree against Perryman. To indemnify Durham, (who paid off the judgment,) Perryman transferred to him, among other things, a note (not negotiable) made by James P. Guerry to Perryman; Durham transferred this note to one John Dennard, who commenced suit thereon, in the name of Perryman for his use. To this suit, Guerry pleaded as a set-off, the balance due on the decree recovered by him against Perryman, and at the same time filed a bill in Equity, in order to get this equitable claim allowed as a set-off.

Pending this suit, in November, 1849, Hardy Durham, John Dennard and Thomas J. Perryman, filed their bill in Twiggs Superior Court, in the nature of a bill of review, setting out the foregoing facts, and praying a review and reversal of the decree rendered upon the original bill against Perryman. This bill alleged farther that, " at the time of the filing of the said bill, Perryman was not a citizen or resident of the State of Georgia, but had long before left said State, and removed to the State of Texas, and has never been in Georgia since, and that the complainants in the said bill, by themselves or their attorneys, with a full knowledge of the fact, directed or procured the Sheriff of Twiggs County to return on said bill, that he had served the same, by leaving a copy at the most notorious place of abode of said Perryman, in the County of Twiggs, when in fact, he had no such residence."

The grounds or reasons assigned for the review were, 1st. Because there was no service of the bill upon Perryman.

2d. Because the bill was taken *pro confesso,* and a decree taken at the second term.

3d. Because the decree does not follow the verdict.

The bill also prayed for an injunction to restrain Guerry from pleading the said decree, or in any manner using it against the suit of Dennard against him. This bill was sanctioned, and injunction granted by Judge *Warren,* who, in the order granting it, stated that " it was represented to him, that the Judge of the Southern Circuit was absent from the Circuit."

To this bill a demurrer was filed, on the grounds, among others :

1st. That there is no allegation that the decree has been signed and enrolled, or performed, or bond and security given for its performance.

2d. Because there is no equity apparent upon the face of the bill.

3d. Because there was no *petition,* supported by affidavit, previous to the sanction of the bill.

4th. Because of the *laches* and lapse of time before complainants applied for the aid of the Court.

At the same time, there was a motion " to dismiss the bill for improvident sanction," on the grounds, among others :

1st. Because the bill was sanctioned without the payment of costs of the former suit, and without giving bond and security for the eventual condemnation money and future costs.

2d. Because it is no where shown that the Judge of the Southern Circuit was absent from his Circuit at the time the bill was sanctioned.

The Court below overruled both the demurrer and the motion, and on this decision error has been assigned.

Scarborough (represented by B. Hill,) for plaintiff in error.

Cole and S. T. Bailey, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

James R. Lowery departed this life intestate, in the County of Twiggs, and letters of administration were granted upon his estate to Thomas J. Perryman, Hardy Durham being his security. In 1841, the heirs at law, to wit : James P. Guerry, in right of his wife, Mary Ann Guerry, formerly Mary Ann Lowery, and as the guardian of Frances R., Emeline and William R. Lowery, who were then minors ; John Williams, in right of his wife, Lurany Williams, formerly Lurany Lowery, and as guardian of Eliza Lowery, another minor, filed their bill in Twiggs Superior Court, against the said Thomas J. Perryman, as administrator, to recover the several distributive shares of said estate, coming to each. At the second term of the Court, in April, 1842, a verdict was rendered for each of the complainants, for the sum of $2048 64, with costs of suit, and a decree was entered thereon, in favor of James P. Guerry, in right of his wife and as guardian for the three minors whom he represented, for the aggregate sum of $8,164 56, besides costs, to be levied of the *individual property* of Thomas J. Perryman. It seems that Williams, both in right of his wife and as guardian of his ward, withdrew from the suit.

A return of " no property " having been made on the *fi. fa.* at April Term, 1843, James P. Guerry, in right of his wife, and as guardian of Frances R. and William R. Lowery, and Bennett S. Battle in right of his wife, who in the meantime, had intermarried with Emeline Lowery, commenced an action at law against Hardy Durham, as the surety of Perryman on the administration bond, to recover the amount of the decree obtained against Perryman. On the trial in April, 1844, a judgment was rendered for the plaintiffs, for $3,380 and costs, the defendant having proved the payment of large sums of money by Perryman to the distributees, and which had not been allowed in the former case. This judgment Durham has discharged.

Perryman transferred to Durham certain promissory notes, for his indemnity as his security, and amongst the rest, one on James P. Guerry, for $950. This note was assigned by Dur-

ham to John Dennard. The note not being negotiable, an action was brought upon it in Sumter County, in the name of Perryman, the payee, for the use of Dennard, the holder. To this action Guerry pleaded as a set-off, the decree in his favor against Perryman, and filed his bill, praying to be allowed this equitable defence.

Hardy Durham, John Dennard and Thomas J. Perryman, now exhibit their bill for the purpose of vacating the original decree against Perryman, on the following grounds, namely : 1st. Because there was no service of the bill on Perryman.

2d. Because a decree was rendered on the bill at the *second* term, without answer and without notice to the defendant, without any appearance on his part, without calling on him to answer, and without any order taking the bill as confessed.

3d. Because the decree does not follow the verdict, neither is it authorized by it.

4th. Because said decree demanded satisfaction out of the individual property of Perryman, and not the assets of the estate of Lowery in his hands.

5th. Because Perryman, before leaving the State, had settled with the legatees, and paid them all or nearly all that he owed them, which was known to the complainants, but which he failed to prove, because the suit proceeded against him *ex parte,* and while he was in a foreign country.

6th. Because, whatever was due to the heirs of Lowery, had been adjudicated in the action at law upon the bond against Durham, the security, and the recovery had been fully satisfied.

7th. Because, in the returns of Perryman, there was a credit of upwards of $11,000, to which he was entitled, but which was overlooked or disregarded by the Jury who tried the cause.

The bill prayed that James P. Guerry might be enjoined from pleading said decree in his favor, or in any other way using the same, to defeat the action against him in Sumter County, upon his note.

At October Term, 1850, of Twiggs Superior Court, a motion was made by the defendants, through their solicitor, to dismiss said bill " *for improvident sanction ;* " and at the same time a demur-

rer was filed, embracing pretty much the same specifications which are contained in the motion. To avoid repetition, I will extract all the grounds which are set forth in both and consolidate them. They are, 1st. For want of equity. 2d. For multifariousness. 3d. Because there is no allegation in the bill that the original decree which is sought to be reversed, was signed and enrolled, performed, a bond and security given for its performance; nor is there any account of the inability of the party to do so.

4th. Because the bill operates as an injunction, when there is no evidence that the costs have been paid, or security given in terms of the law.

5th. Because there was no petition for leave to file the bill.

6th. Because the bill was sanctioned by the Judge of the South-western Circuit, when it does not appear that the Judge of the Southern Circuit in which it is pending, was absent from his Circuit at the time it was granted.

7th. Because complainants' remedy is lost by lapse of time.

8th. Because the ground upon which the complainants seek relief, so far as the new matter is concerned, existed long before the first finding.

9th. Because the bill is not restricted to the original subject matter of litigation, but seeks to introduce new matter, which is extrinsic and wholly irrelevant to the former issue.

10th. Because the bill is brought in part by Durham only, and the name of Perryman is only used collaterally.

I propose to examine, in the first place, whether or not there is any foundation for this bill. Are there any errors apparent upon the face of the proceedings, which would entitle the complainants to the relief which they seek? They complain of the amount of the decree, and insist that it does not follow the verdict. We do not so understand it. The verdict was for $2048 64, for each of the complainants. Two of them, that is, Williams in right of his wife, and as guardian for one of the minors, discontinued their suit, and the decree was entered up $8,194 56, in favor of the other four. It is, therefore, in strict conformity with the finding of the Jury.

[1.] Nor would there have been any irregularity in taking the bill as confessed, and proceeding to trial at the *second* term, provided it had been served, and the defendants had failed to answer.

That the order to make the money out of the *individual* property of Perryman, was manifestly wrong, we entertain no doubt. In *Jones vs. Robinson, (Dud. Rep.* 1,) the Judges in convention say that, " this practice has not the sanction of a single decision." But we are not prepared to hold that, upon this ground alone, a bill of review should have been sanctioned.

[2.] But the broad foundation for this proceeding is found in the fact that, the original bill under which the decree was rendered, which it is attempted to set aside, was never served. Upon this point the bill charges that, " at the time of the filing of the original bill against Perryman, the defendant was not a citizen or resident of the State of Georgia, but had long before left the same, and removed to the State of Texas, and has never returned since; or that the complainants, either by themselves or their attorneys, with a full knowledge of these facts, fraudulently directed and procured the Sheriff of Twiggs County to return on the bill, that he had served the same, by leaving a copy at the notorious place of abode of the defendant in the County of Twiggs, when in fact, he (Perryman) had no such residence." If this statement be true, and it is admitted to be so, both by the demurrer and the motion to dismiss, then the whole proceeding is a nullity, and the parties take nothing under it.

Is there anything in the manner in which this bill comes into Court, why it should not be sustained?

It is said to have been " *improvidently sanctioned.*" Judge *Warren* certifies that it was " *represented* " to him, that Judge *Scarborough* was absent from his Circuit, within which the bill is returnable. How represented, does not appear. We are bound to presume that it was upon the oath of the complainants, or upon other sufficient testimony.

[3.] Again, it is objected that no costs were paid, or security given. And it is admitted that the record furnishes no proof of these facts. But we apprehend that this omission is no

good reason for dismissing the bill. By the Act of 1811, (*New Dig.* 524,) no injunction could be granted until the party applying for the same had previously given to the party against whom the injunction was to operate, a bond with good and ample security, for the eventual condemnation money, together with all future costs.

[4.] But by the amendatory Act of 1842, (*Ib.* 528,) the Judges of the Superior Courts of this State are authorized to grant injunctions, upon such security and under such terms, as in their discretion, the case may require.

Now, it does not appear that any security was necessary in the present instance. The complainants do not seek to restrain the collection of the original decree. All that is asked is, that Guerry may not be permitted to use it by way of defence to the suit which has been brought against him on his note, in Sumter County. All that the defendants could require, under any aspect of the circumstances, would be, to dismiss the injunction, unless security was given. We think this matter may be safely confided to the discretion of the Circuit Judge.

Finally, do the complainants come too late to be entitled to relief?

It is conceded that in England, a bill of review for errors apparent upon the face of the record, will not lie after the time when a writ of error could be brought, and that Courts of Equity govern themselves in this particular, by the analogy of the Common Law, in regard to writs of error. *Smith vs. Clay, Ambl. R.* 645 *S. C.* 3 *Bro. Ch. R. by Belt,* 639, *note. Mitf. Eq. Pl. by Jeremy,* 88. *Cooper's Eq. Pl.* 91, 93. *Wyatt's Pr. Reg.* 97, 98. *Lytton vs. Lytton,* 4 *Bro. Ch. R.* 441. *Kelly vs. Lennon,* 1 *Jones and Latouche R.* 305. And that there, where writs of error must be brought within twenty years after a judgment, unless in certain cases of disabilities, the like limitation is adopted in Courts of Equity as to bills of review, for errors apparent on the face of decrees. And that for the same reason, in the Courts of the United States, bills of review for errors apparent upon the face of decrees, are limited to five years, that being the limitation of

writs of error upon judgment at Law. *Thomas vs. Harvies Henis,* 10 *Wheat. R.* 146.

But in this State, until 1845, we had no writ of error, unless a writ of error *coram nobis*; if indeed, any such remedy was practicable under our Judiciary. But bills of review have always been entertained by our Courts. From the first organization of the State government, they have been considered in the nature of an application for a new trial in Equity. And as to the time within which they must be brought, as no analogy can be invoked from writs of error in this State, we see no alternative but to apply the Common Law rule of twenty years, after the judgment which is sought to be reviewed. I earnestly hope that the present Legislature may not adjourn, without providing the necessary remedy for this defect in our laws. Two or three years is quite long enough, provided the Statute contained the usual exception in favor of persons laboring under legal disabilities; such as minors, married women, insane persons, and those who are imprisoned on any criminal charge, or in execution for any criminal offence, &c.

The other points in this case, relate to matters of form rather than of substance, and are not, in our judgment, deserving of a more particular consideration, than the incidental notice which has been taken of them in the course of this discussion.